CHASE (CLARKE v.). See Case No. 2,845.

———

## Case No. 2,626.

### CHASE et al. v. CRARY et al.

[24 How. Pr. 159.]

District Court, S. D. New York. June Term, 1855.

COLLISION—BETWEEN TOWS — DEFECTIVE ENGINE —JOINT NEGLIGENCE — LIBEL AGAINST VESSELS JOINTLY—AGAINST OWNERS JOINTLY.

[1. A libel for damages caused by the joint negligence of two vessels may be maintained jointly against them. Smith v. The Creole and The Sampson, Case No. 13,033, followed. The Moxey, Case No. 9,894, distinguished.]

[2. Where the negligence of one vessel only is proved, the decree may be against her, and in favor of the other vessel. Smith v. The Creole and The Sampson, Case No. 13,033, followed.]

[3. A libel may likewise be maintained against the owners of the vessel jointly.]

[4. A tow stopped in time to enable an approaching tug and barge in tow to cross her bows. The latter slowed, stopped, and signaled the other to go ahead, which he did. The signaling tug failed to change her course, and, being unable to check her progress by backing, a collision took place. Held, that the signaling tug was in fault.]

[Distinguished in Boyer v. The Wisconsin and The Hector, Case No. 1,756.]

[5. Where a tug's engine is not strong enough to back against the wind, and thereby avoid a collision, she is guilty of negligence in exposing other vessels to danger by reason of the weakness of her engines.]

[6. After a vessel damaged by collision has been repaired, the court will not allow for additional work alleged to be necessary to make the vessel good, unless the evidence clearly establishes the necessity.]

[7. Speculative and uncertain testimony as to the depreciation of a vessel damaged by collision is insufficient to sustain an allowance therefor.]

In admiralty. This libel was filed by [Sylvanus G. Chase and others] the owners of

the lake boat Frank Carver, against [Humphrey H. Crary and others] the owners of the steam tug Catherine, and the owners of the steam tug Geo. Birkbeck, Jr., to recover the damages occasioned to the Carver while in tow of the Catherine by a collision with a lumber barge in tow of the Birkbeck on the 8th of November, 1854, in the East river. The Carver was on the larboard side of the Catherine, and the barge was on the starboard side of the Birkbeck, her bow projecting beyond the steamboat's stern. The Catherine was coming from the Atlantic docks, bound to pier No. 17, East river, at the rate of about three miles an hour. The Birkbeck was bound to a pier in Brooklyn, and when first seen appeared to be coming across the Catherine's bows. When about ten yards apart, the pilot of the Catherine gave orders to slow and back. The Birkbeck had slowed and stopped before; and about the time when the Catherine slowed, the Birkbeck backed her engine, but her forward progress was not stopped, nor was her course changed. The Catherine had been stopped in the water, but when about fifty feet apart, the pilot of the Birkbeck motioned her to go ahead, which was done; but notwithstanding, the barge struck the Carver head on, a little aft midships;—and the libel is filed, alleging joint negligence and fault on the part of the two steamboats. The respondents took the exception that there can be no joint negligence on the part of two steamboats, and that they would not be jointly liable even in rem.

C. Van Santvoord, for libellants.

D. McMahon, for claimants and respondents.

HELD BY THE COURT (INGERSOLL, District Judge): That the case of The Sampson [Smith v. The Creole, Case No. 13,033] is a case where a libel had been filed against two vessels in rem, without any such exception having been taken either by the counsel or by the court, which could hardly be if there were any validity in the exception, and that the case of The Moxey [Case No. 9,894], decided by Judge Betts in 1847, was different from this, in that the libel did not allege a joint negligence. That it must therefore be held that a libel against two vessels for joint negligence can be sustained. That, where the collision is occasioned by the joint negligence of those who have charge of the vessels as servants of the owners, then a libel may be sustained against the owners jointly, as well as against the vessels. That, as in the case of The Samson a charge of joint negligence may be made against two vessels, and the proof show negligence against only one; and in such a case the decree must be against that one, and in favor of the others. That, on the evidence in this case, there was negligence on the part of the Birkbeck, in not changing her course; and if, as her pilot

says, her engine was not strong enough to back against the wind which was blowing, he was negligently exposing other vessels to be run down, by having so weak an engine. That there is no evidence of fault on the part of the Catherine. She slowed and stopped in time to enable the Birkbeck to avoid the collision, and had good reason to believe that the engine of the Birkbeck was strong enough to give her stern way against the wind, and that she would change her course, if necessary. That her going ahead was not the cause of the collision, which would have equally happened if she had not done so. That there was no fault on the part of the Carver, either in not having a man at her helm, or in not properly using fenders. The pilot of the Catherine told the man at the helm that he was not wanted there, and that the best was done with the fenders that could be done under the circumstances.

Libel dismissed as against Crary, the owner of the Catherine; and, as against the owners of the Birkbeck, decree for libellants, with a reference.

On the reference as to the damages, the libellants proved that they had never fully repaired the vessel. The witnesses proved the amount of repairs actually put on, and also testified that, to make the vessel as good as she was before, she would need some brace clamps on the opposite side from the injury, which would cost $67.40; while witnesses for the respondents testified that she would not need such clamps. The commissioner reported that the libellants should recover the amount of the repairs actually put on, and the cost of the brace and clamps, and $100 for depreciation in the market value of the vessel, and $25 for her detention. To this report the respondents excepted.

The matter, on exceptions, was argued by

Mr. Van Santvoord, for libellants.

Mr. McMahon, for respondents.

HELD BY THE COURT (INGERSOLL, District Judge): That, to enable the libellants to enforce their right to be made good, they must submit such evidence as will enable the court to say what sum will make them good. That the most satisfactory way of determining whether the brace clamps would be required would have been to repair the boat fully. This, however, was not done, and the evidence is not sufficient to satisfy the court that they are required. That the evidence of depreciation given is not sufficient to support that item. It is too speculative and uncertain. That the report must therefore be so modified as to strike out those two items.

---

CHASE (LEE v.). See Case No. 8,185.

CHASE (MATTHEW v.). See Case No. 9,-283a.